**Manuel DeJESUS, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket 97–2328.**

United States Court of Appeals, Second Circuit.

Argued June 25, 1998.

Decided Oct. 22, 1998.

Edward S. Zas, Of Counsel, The Legal Aid Society Federal Defender Division Appeals Bureau, for Appellant.

David C. Finn, Dietrich L. Snell, Of Counsel, (Mary Jo White, United States Attorney for the Southern District of New York), for Appellee.

Before: VAN GRAAFEILAND and KEARSE, Circuit Judges, and VANCE, District Judge.[1]

VANCE, District Court Judge.

Manuel DeJesus appeals a district court order denying his petition to vacate his conviction of using or carrying a firearm during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Relying on the United States Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), DeJesus argues that the trial court gave the jury an

erroneous instruction regarding the meaning of "use" under § 924(c). The district court denied DeJesus's petition. We affirm.

## I. FACTUAL BACKGROUND

Manuel DeJesus and two codefendants, Ramon Gregorio Salazar and Pedro Camilo, were charged in a seven count indictment with various weapons and drug trafficking violations. Five of the counts variously charged the defendants with distributing and possessing with the intent to distribute cocaine and cocaine base, as well as with conspiracy to commit those offenses, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), 841(b)(1)(A) and 846, respectively. A separate count charged that on December 6, 1988 DeJesus and Salazar used and carried a firearm in the course of drug trafficking in violation of 18 U.S.C. § 924(c). A final count charged all of the defendants with using and carrying a firearm during a drug trafficking crime on December 7, 1988.

A jury convicted DeJesus of all of the counts on June 9, 1989. At trial, the government introduced the following evidence to support the weapons charges. On December 6, 1988, Detective Frank Garrido, a New York City Police officer acting undercover, went to 2315 Walton Avenue, Apartment 2F, to purchase cocaine. Upon entering the apartment, Garrido observed Juan Ramon Rodriguez holding a silver-plated revolver and another man holding a black pistol. DeJesus was seated at a table, weighing out quantities of cocaine to sell to unidentified customers. Garrido requested an ounce of cocaine. The individual holding the black pistol stated that he would have to first get "the boss," Rey. After placing his gun on a shelf behind the television, this individual briefly left the apartment before returning with Salazar, who then sold Garrido an ounce of cocaine. (Tr. 64–68; App. 18–22; Gov't Ex. 1A.)

Garrido returned to Apartment 2F the following day to purchase additional quantities of cocaine. Upon entering the apartment,

1. The Honorable Sarah S. Vance, District Judge of the United States District Court for the East-  ern District of Louisiana sitting by designation.

Garrido once again observed Rodriguez with a weapon and DeJesus weighing cocaine. (Tr. 73; App. 25.) Upon seeing Garrido, DeJesus instructed Rodriguez to get Salazar. Garrido testified that before leaving the apartment, Rodriguez handed his silver-plated revolver to DeJesus. (Tr. 74; App. 26.) Rodriguez returned to the apartment moments later followed by Salazar. Garrido testified that DeJesus was carrying the revolver when he let Salazar into the apartment. (*Id.*) Salazar and DeJesus proceeded to sell Garrido two ounces of cocaine for $1,200. (Tr. 76; App. 28.) Minutes after Garrido purchased the two ounces of cocaine, agents of the New York Drug Enforcement Task Force executed a search warrant at Apartment 2F. Upon entering the apartment, the officers saw Rodriguez throw the silver-plated revolver behind the kitchen stove. (Tr. 153, 252–55; App. 34, 61–64.)

At trial, Rodriguez testified for the government pursuant to a plea agreement. Rodriguez stated that he had been hired by the drug operation to act as an armed doorman. He testified that DeJesus worked for the drug operation by weighing and selling cocaine to customers. Rodriguez further stated that DeJesus would hold the gun whenever Rodriguez had to leave the apartment. (Tr. 240–41; A 50–51.) The government also introduced evidence showing that DeJesus's left index fingerprint was found on the silver-plated revolver's cylinder. (Tr. 355–58, 373–74; Gov't Ex. 5 & 6.)

The government used this evidence to support its argument that DeJesus handled the weapon in his capacity as a drug dealer on December 7, 1988. It did not rely on a secondary theory that DeJesus could be found guilty under 18 U.S.C. § 924(c) by his constructive possession of the weapon.

DeJesus did not testify in his own defense. Rather, his attorney argued that DeJesus was arrested in Apartment 2F, not as a drug dealer, but as a purchaser. He tried to rebut the government's fingerprint evidence by introducing the testimony of a former New York City Police Department fingerprint examiner who stated that a right-handed person like DeJesus would not have left the fingerprint found on the gun's cylinder when loading the weapon. (Tr. 596–99.) The expert did admit, however, that the fingerprint might have been placed on the weapon if it had been loaded in a nonconventional manner. (Tr. 601–02.)

The district court instructed the jury that in order to convict DeJesus of violating § 924(c) on December 7, 1988, it must find beyond a reasonable doubt that DeJesus had unlawfully, intentionally, and knowingly carried or used a firearm, or aided or abetted the carrying or use of a firearm, during and in relation to a drug trafficking crime. (Tr. 908; App. 160.) The court separately defined "using" and "carrying" a firearm for the jury. The district court instructed the jury that in order to find that the defendant had "carried" the firearm, "[the gun] must either be within his person or within his reach during the commission of the drug offense." (Tr. 909; App. 161.) The court then defined "use":

> The term use is somewhat broader in meaning. It is not necessary for the government to establish that the weapon was actually fired, rather, it must first be shown that the defendant had possession of it in the sense that at a given time he had both the power and intention to exercise dominion or control over it or had aided and abetted another in that effort.
>
> In addition to this possession, there must be some connection to narcotics trafficking. One of the following is required:
>
> Number one, proof of a drug transaction in which circumstances surrounding the presence of a firearm suggests that the defendant intended to have it available for use during the transaction, or, two, the circumstances surrounding the presence of the firearm in a place where drug transactions take place suggests that it was strategically located so that it was quickly and easily available for use during such transaction. (App.161–62.)

Although the court gave an aiding and abetting instruction, it did not instruct the jury on a *Pinkerton* theory of liability. *See Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946) (allowing coconspirator to be convicted of substantive offense committed by another co-

conspirator in furtherance of conspiracy when offense was reasonably foreseeable consequence of conspiratorial agreement).

After the jury convicted DeJesus on all counts, the district court granted DeJesus's motion for judgment of acquittal on the December 6, 1988 weapons count. The district court sentenced DeJesus to concurrent terms of ten-years imprisonment on the drug charges to be followed by a five-year consecutive term for the December 7, 1988 weapons charge. This Court affirmed DeJesus's conviction by summary order on August 16, 1990. *See United States v. Salazar,* 914 F.2d 239 (2d Cir.1990).

DeJesus filed this petition under 28 U.S.C. § 2255 on August 30, 1996, challenging his conviction on the 18 U.S.C. § 924(c) charge in light of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The United States opposed the petition, asserting that the overwhelming evidence at trial indicated that the jury convicted DeJesus for illegally carrying a firearm on December 7, 1988, so that any error in the "use" instruction did not prejudice DeJesus. The district court agreed and denied DeJesus's habeas petition on March 27, 1997. DeJesus appeals that decision.

## II. ANALYSIS

### A. *Bousley v. United States* Analysis

■■■ We first address whether DeJesus has met the procedural prerequisites to considering the merits of his *Bailey* claim. DeJesus failed to challenge the use instruction at trial or on direct review. The Supreme Court has stated that "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States,* —— U.S. ——, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (quoting

*Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quotation omitted)); *see United States v. Munoz,* 143 F.3d 632, 637 (2d Cir.1998) ("A motion under § 2255 is not a substitute for an appeal."). Thus, if a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is "actually innocent" of the crime of which he was convicted. *See Bousley,* 118 S.Ct. at 1611; *Murray v. Carrier,* 477 U.S. 478, 485, 496, 106 S.Ct. 2639, 2643–44, 2649–50, 91 L.Ed.2d 397 (1986).

Until the Supreme Court's recent decision in *Bousley,* we concluded that a prisoner bringing a post-*Bailey* challenge to a pre-*Bailey* conviction could establish "cause" for failing to assert the claim on direct review.[2] *See Triestman v. United States,* 124 F.3d 361, 369 n. 8 (2d Cir.1997) (collecting cases) ("Since the broad definition of 'use' that was subsequently rejected by the Supreme Court in *Bailey* was well-established in this circuit, [the defendant] was justified in failing to challenge that definition on appeal or in his prior § 2255 petitions.") (citation omitted); *see also United States v. Logan,* 135 F.3d 353, 355 (5th Cir.1998) (finding "cause" for failure to raise issue on direct appeal, but rejecting petition for lack of prejudice). *But see Bousley v. Brooks,* 97 F.3d 284, 287–88 (8th Cir.1996) (*Bailey*-type claim waived when petitioner failed to raise it on direct review even though *Bailey* had yet to be decided). In *Bousley,* however, the Supreme Court clarified that a defendant asserting a *Bailey* claim on collateral review after his plea of guilty must, if he failed to raise the issue on a direct appeal challenging the constitutional adequacy of his plea proceedings, either show cause and prejudice for his failure or demonstrate his "actual innocence." 118 S.Ct. at 1610–11. *See also Tannenbaum*

---

2. The government argued in its brief that a defendant seeking relief pursuant to § 2255 is required to show "'both (1) "cause" excusing his ... procedural default [of failing to raise the alleged error on direct appeal], and (2) "actual prejudice" resulting from the errors of which he complains.'" (Government brief on appeal at 14–15 (quoting *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (modifications in brief).) However, the govern-

ment's brief did not dispute the existence of "cause" in light of this court's then-existing precedents (*Id.* at 15). The government thereafter, prior to oral argument of the appeal, sent us a letter calling our attention to *Bousley,* which was decided after the briefs on appeal had been filed, and pointing out that *Bousley* was pertinent because DeJesus had failed to raise his *Bailey* claim on direct appeal.

*v. United States,* 148 F.3d 1262, 1263–64 (11th Cir.1998) (following *Bousley* ).

In rejecting Bousley's arguments for cause, the Supreme Court found that the default could not be excused on the grounds that his legal argument was "not reasonably available" to counsel or that raising it would have been futile. *Bousley,* 118 S.Ct. at 1611. The Court reasoned that at the time of Bousley's guilty plea in 1990 "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.' " *Id.* (citing *United States v. Cooper,* 942 F.2d 1200, 1206 (7th Cir.1991), *cert. denied,* 503 U.S. 923, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992)). In rejecting the futility argument, the Court stated that " 'futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " *Id.* These principles apply with equal force to DeJesus' default, which occurred within roughly the same time period as Bousley's. *See, e.g., United States v. Meggett,* 875 F.2d 24, 27–29 (2d Cir.1989) (involving challenge to possession of firearms as "use" under § 924(c)). Finally, while *Bousley* arose in the context of a collateral attack of a conviction based on a guilty plea, the Court's analysis of whether there was cause for failing to challenge an improper use definition on direct appeal applies equally to convictions based on jury verdicts. *See United States v. Sorrells,* 145 F.3d 744, 749–50 (5th Cir.1998) (applying *Bousley* to conviction after jury verdict); *United States v. Ramos,* 147 F.3d 281, 287 (3d Cir.1998) (same); *Garcia v. United States,* 15 F.Supp.2d 367, 375–77 (S.D.N.Y.1998) (same).

■ The Supreme Court in *Bousley* also made clear that when a habeas petitioner is required to meet the "actual innocence" standard, he must satisfy a higher hurdle than the "prejudice" prong of the cause and prejudice standard. The Court stated that petitioner "must demonstrate that "in light of all the evidence," 'it is more likely than not that no reasonable juror would have convicted him.' " *Bousley,* 118 S.Ct. at 1611 (quoting *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 867–68, 130 L.Ed.2d 808 (1995)). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* Accordingly, DeJesus' § 924(c) conviction will

be reversed only if, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him of carrying or using a firearm, or aiding and abetting that conduct, during the course of a drug trafficking crime.

**B. Application of Actual Innocence Standard**

■ Title 18, United States Code Section 924(c) applies to a person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c). A defendant may therefore be found guilty under Section 924(c) for either carrying or using a firearm in connection with drug trafficking activities. *See, e.g., Bailey,* 516 U.S. at 146, 116 S.Ct. 501 (noting that a firearm can be used without being carried and can be carried without being used). It is obvious here that the court's "use" instruction was inconsistent with *Bailey.* In *Bailey,* the Supreme Court held that to satisfy the "use" prong of § 924(c), the government must show a defendant's "active employment" of the firearm. *Id.* at 148, 116 S.Ct. 501. The Court explained that active-employment "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* However, "the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)." *Id.* at 149, 116 S.Ct. 501. The "use" instruction given the jury in this case was consistent with a "constructive possession" definition held to be improper in *Bailey.* (App.161–62.)

■ While the Supreme Court's "active-employment" requirement overturned the basis of the district court's "use" instruction, the *Bailey* decision did not address the meaning of "carry" under Section 924(c). The trial court in this case also instructed the jury on the "carrying" element. Further, while the trial court's "use" charge was improper under *Bailey,* its "carry" charge was not. Thus, unless based on all the evidence, we find it more likely than not that no reasonable juror would have convicted DeJesus of either using or carrying a firearm under § 924(c), habeas relief is unavailable.

It is clear on this record that DeJesus cannot satisfy the actual innocence standard with respect to the carrying charge. The

government presented evidence at trial that DeJesus handled the silver-plated revolver on December 7, 1988 as a drug dealer. (Tr. 74; App. 26.) Undercover Detective Garrido testified that he witnessed Rodriguez hand the gun to DeJesus when Garrido was at apartment 2F on December 7 to purchase cocaine. (*Id.*) Garrido testified that DeJesus was carrying the revolver when he let Salazar into the apartment and that Salazar and DeJesus proceeded to sell him cocaine. (*Id.*) Rodriguez confirmed that DeJesus sold cocaine and carried the gun when Rodriguez left the apartment. (App.49–51.) The police found DeJesus's fingerprint on the weapon itself. (Tr. 355–58, 373–74; Gov't Ex. 5 & 6.)

DeJesus did not introduce evidence to controvert this eyewitness testimony directly. Rather, he challenged the credibility of the government's witnesses and tried to undermine the fingerprint evidence by suggesting that his print was not left on the gun while loading it. (Tr. 596–99.) Indeed, DeJesus's trial strategy was to challenge the capacity in which he handled the weapon on December 7, 1988. DeJesus argued that he was present in Apartment 2F as a consumer rather than as a drug dealer.[3]

The record at trial convinces us that DeJesus has no claim of "actual innocence" of the § 924(c) charge so as to warrant relief under 28 U.S.C. § 2255.

## CONCLUSION

The district court's order denying DeJesus's § 2255 petition is therefore AFFIRMED.

---

**3.** As DeJesus's counsel argued to the jury:

Not one paper, one document, one beeper, one photograph, one alias is connected to Manuel DeJesus, and he is supposedly working there. No bills, no payments, no nothing. His name is not on any of these records, his name is not in photographs, he is not carrying a beeper.

And that, I suggest to you, ladies and gentlemen, is because he wasn't there selling drugs. (SA–43.)

What happened here, ladies and gentlemen, [was] that Manuel DeJesus was there perhaps to buy drugs. (SA–71.)

Counsel for DeJesus also suggested that the government might have found DeJesus's fingerprint on the gun because "he could have been holding [the gun] gingerly as a purchaser of drugs would look at the gun." (SA–38.)