**Antonio ROSARIO; Jose Jeres; Antonio Ramirez, Petitioners–Appellants,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket Nos. 97–2747, 97–2848 and 97–2751.**

United States Court of Appeals, Second Circuit.

Argued Sept. 8, 1998.

Decided Dec. 18, 1998.

Anthony R. Cueto, Pollack, Pollack, Isaac & DeCicco, New York, N.Y., for Petitioner–Appellant Antonio Rosario.

James Roth, New York, N.Y., for Petitioner–Appellant Jose Jeres.

Arza Rayches Feldman, Roslyn, N.Y., for Petitioner–Appellant Antonio Ramirez.

Alexandra A.E. Shapiro, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Craig A. Stewart, Assistant United States Attorney, of counsel), for Respondent–Appellee.

Before: McLAUGHLIN, JACOBS, and SACK, Circuit Judges.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

In August 1992, agents of the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") learned that crack cocaine was being sold out of Apartment 4B at 54 West 174th Street in the Bronx, New York. The agents provided a confidential government informant ("CI") with pre-marked "buy money" to buy cocaine. The CI entered Apartment 4B and returned five minutes later with a small quantity of crack cocaine.

Three days later, at the behest of ATF officials, the CI made another purchase at the apartment. The agents then got a search warrant for Apartment 4B. As the agents approached, Antonio Ramirez was exiting the apartment. When the agents identified themselves, Ramirez fled back inside the apartment and slammed the door.

Agents maintaining surveillance outside the apartment building spotted Ramirez, Antonio Rosario, and Jose Jeres running down the fire escape from Apartment 4B to Apartment 2B. ATF agents received permission to enter Apartment 2B where they arrested Ramirez, Rosario, and Jeres.

When ATF agents searched Apartment 2B, they discovered cocaine, a wad of currency (including the pre-marked ATF "buy money"), and an Iver Johnson revolver. A search of Apartment 4B uncovered additional narcotics, narcotics paraphernalia, and a Colt .45.

Ramirez, Rosario, and Jeres were indicted in the United States District Court for the Southern District of New York (Sand, *J.*), for, *inter alia,* using and carrying firearms in connection with narcotics trafficking, in violation of 18 U.S.C. § 924(c). On December 10, 1992, pursuant to written plea agreements, each defendant pled guilty to all counts of the indictment. Judge Sand later sentenced Jeres to a term of 106 months' imprisonment, Ramirez to a term of 111 months, and Rosario to a term of 106 months' incarceration.

Four years later, following the decision of the United States Supreme Court in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that "use" of a firearm under 18 U.S.C. § 924(c) requires "active employment" of the firearm, Ramirez filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction. Rosario and Jeres quickly followed suit. All three claimed that the record did not support their § 924(c) pleas under the new *Bailey* standard for criminal "use" of a firearm.

On May 28, 1997, Judge Sand held an evidentiary hearing on the § 2255 motions. Relying on his personal observations during the arrest, as well as information obtained from the CI, ATF agent Robert Cucinelli testified that Rosario and Ramirez had carried firearms during the August 27, 1992 crack cocaine sale. In addition, the government introduced several reports containing information provided by the CI to Cucinelli immediately after the cocaine sales on August 24, 1992 and August 27, 1992.

By Opinion and Order dated September 29, 1997, the court denied all three motions. Judge Sand initially determined that Agent Cucinelli's recitation of information obtained from the CI constituted hearsay evidence which was not admissible at a § 2255 hearing. Accordingly, Judge Sand expressly declined to consider the hearsay portions of Agent Cucinelli's testimony. However, Judge Sand believed that the information contained in the defendants' plea allocutions and Presentence Reports ("PSR"), coupled with Agent Cucinelli's non-hearsay testimony, provided an adequate factual basis to support each defendant's conviction. Judge Sand held that: (1) Rosario and Ramirez were "carrying" firearms while the sale of crack cocaine was taking place in violation of § 924(c); and (2) Rosario's and Ramirez' visible display of firearms during the narcotics sale was criminally attributable to Jeres, a participant in the criminal conspiracy.

Ramirez, Rosario, and Jeres now appeal, arguing that Judge Sand erred (a) by relying on the hearsay information contained in their PSRs and (b) by finding that there was an adequate factual basis for their § 924(c) convictions.

## DISCUSSION

### I. *Procedural Bar*

■ Significantly, neither Rosario, Ramirez, nor Jeres appealed their convictions following their pleas of guilty. "A motion under § 2255 is not a substitute for an appeal." *United States v. Munoz,* 143 F.3d 632, 637 (2d Cir.1998) (citations omitted); *see Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) ("And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) "cause for failing to raise the issue, and prejudice resulting therefrom," *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993); or (2) "actual innocence." *Bousley,* 118 S.Ct. at 1611.

■ The defendants, however, are not the only ones who have to hurdle the doctrine of forfeiture or waiver. Having failed to raise the issue of defendants' procedural default either before Judge Sand or in its briefs to this Court, the government too has forfeited or waived the argument. *See, e.g., Trest v. Cain,* 522 U.S. 87, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997); *United States v. Canady,* 126 F.3d 352, 359–60 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1092, 140 L.Ed.2d 148 (1998). We may, nevertheless, raise these issues *sua sponte. See, e.g., United States v. Talk,* 158 F.3d 1064, 1067 (10th Cir.1998); *see also Washington v. James,* 996 F.2d 1442, 1448 (2d Cir.1993) (raising defendant's procedural default *sua sponte* on state prisoner's § 2254 petition). We believe that consideration of these issues is appropriate here for three reasons.

First, it is necessary to protect the finality of federal criminal judgments. *See United States v. Allen,* 16 F.3d 377, 379 n. 2 (10th Cir.1994) ("the important interests served by the principle of finality [of criminal judgments] cannot always be foreclosed by waiver"); *see also United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Raising the issue of defendants' procedural default is particularly appropriate where, as here, the movants pled guilty. We recognize that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *see Bousley,* 118 S.Ct. at 1610. "The impact of inroads on finality is greatest in the context of guilty pleas because the vast majority of criminal convictions result from such pleas and because the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea." *Lucas v. United States,* 963 F.2d 8, 14 (2d Cir.1992) (internal quotation omitted).

In addition, the unique circumstances of this case compel the conclusion that the government was not blameworthy in failing to raise this issue. Because *dictum* in *Triestman v. United States,* 124 F.3d 361, 369 n. 8

(2d Cir.1997), indicated that a § 2255 movant's *Bailey* claim could easily hurdle a procedural bar challenge, the government may well have concluded that it would be subject to criticism for raising a frivolous argument. It was only in May 1998—one month after the government submitted its brief in this appeal—that the Supreme Court suggested in *Bousley* that the *Triestman dictum* might be incorrect. *See De Jesus v. United States,* 161 F.3d 99, 102–03 (2d Cir.1998).

Finally, the procedural default is manifest from the record and, hence, resolution of this defense does not require further fact-finding. Thus, additional scarce judicial resources need not be expended by remanding this case to the district court. *See Washington,* 996 F.2d at 1449.

Granted, appellate courts should not lightly raise the issue of a defendant's procedural default *sua sponte.* We are aware that prisoners seeking *habeas corpus* relief lack the resources available to the government. We should hesitate to lend the weight of the judiciary to this already uneven fight, lest we be cast in the role of a second line of defense, protecting government prosecutors from their errors. We are satisfied, however, that this appeal warrants the exercise of our inherent power to raise the previously unaddressed issue.[1] We now turn to it.

### A. *Cause and Prejudice*

■ Ramirez, Rosario, and Jeres cannot now show "cause" for their failure to raise their claims on direct appeal. True it is that in *Triestman,* 124 F.3d at 369 n. 8, we indicated in *dictum* that a § 2255 movant could be forgiven for his failure to challenge on appeal the loose pre-*Bailey* definition of "use" under § 924(c). This was because "the broad definition of 'use' that was subsequently rejected by the Supreme Court in *Bailey* was well-established in this circuit" and an appeal would have been doomed. *Id.* As we recently noted in *De Jesus,* however,

the Supreme Court's decision in *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), rejects the *Triestman dictum. See De Jesus,* 161 F.3d at 102–03. In *Bousley,* the § 2255 movant made the same argument that Ramirez, Rosario, and Jeres now urge, *i.e.,* the guilty plea to "using" a firearm was not knowing and voluntary because at the plea allocution the district court did not provide correct information about what constituted "use." 118 S.Ct. at 1608, 1611. The *Bousley* defendant contended that: (1) "the legal basis for his claim was not reasonably available to counsel at the time his plea was entered," and (2) "before *Bailey,* any attempt to attack [his] guilty plea would have been futile." *Id.* at 1611 (quotations omitted).

The Supreme Court was not impressed by the argument that his claim regarding "use" was novel. The Court noted that "at the time of [movant's] plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" *Id.* The Court also rejected the fundamental premise that it would have been futile to raise the claim before *Bailey,* reasoning that "'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)); *see De Jesus,* 161 F.3d at 102–03.

### B. *Actual Innocence*

■ None of the defendants can establish "actual innocence." "To establish actual innocence, [the movant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 118 S.Ct. at 1611 (internal quotation marks omitted). This means "factual innocence, not mere legal insufficiency." *Id.*

---

1. Judge Jacob's concurrence suggests that we are applying a looser standard to forgive a government's failure to raise an argument than we apply when the defendant commits the identical sin. The difficulty with this argument is that the sins are different. In the defendants' case, they took no appeal whatsoever. In the government's case, the government at all times vigorously contested the defendants' *habeas* motion, but neglected to raise a single point-for what we conclude was an understandable reason. There is no inequity here. Indeed, the surest way to inequity is to treat unequal thing equally.

### 1. *Criminal Liability under Section 924(c)*

Section 924(c) is violated if the defendant either used or carried a firearm during and in relation to drug trafficking or a crime of violence. *See* 18 U.S.C. § 924(c). A defendant "carries" a firearm under § 924(c) if "during and in relation to the drug trafficking crime, [the defendant] either (1) had physical possession of the firearm, ... or (2) moved the firearm from one place to another." *Canady*, 126 F.3d at 358 (citations omitted). Similarly, a conviction under the "use" prong requires the government to establish "active employment of the firearm." *Bailey*, 516 U.S. at 144, 116 S.Ct. 501. "Active employment" includes, *inter alia*, "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire" the weapon. *Id.* at 148, 116 S.Ct. 501. However, a "defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds," or for "placement of a firearm to provide a sense of security or to embolden." *Id.* at 149, 116 S.Ct. 501.

#### (a). *Rosario and Ramirez*

Rosario and Ramirez clearly cannot show that they are "actually innocent" of their § 924 convictions. Rosario admitted during his plea allocution that he "carr[ied]" a firearm "[i]n connection with selling crack." Similarly, Ramirez, in response to Judge Sand's questioning during his plea allocution, stated that he "use[d] and carr[ied]" a Colt .45 in connection with the sale of drugs. In the glaring light of these inculpatory statements, any reasonable juror could only conclude that both Rosario and Ramirez "carried" firearms in violation of § 924(c). *See Salas v. United States*, 139 F.3d 322, 325 (2d Cir.1998), *cert. denied*, — U.S. —, 118 S.Ct. 2377, 141 L.Ed.2d 744 (1998); *see also Muscarello v. United States*, — U.S. —, —, 118 S.Ct. 1911, 1915, 141 L.Ed.2d 111 (1998)("[n]o one doubts that one who bears arms on his person 'carries a weapon'").

#### (b). *Jeres*

Jeres' case is somewhat different but he too cannot show that he is actually innocent of his § 924(c) conviction. A reasonable jury would find that, under a *Pinkerton* theory of liability, the facts admitted by the movants at their plea allocutions support the criminal liability of all three defendants for using or carrying a firearm in violation of § 924(c).

Under the test for co-conspirator liability announced in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), "a coconspirator who does not directly commit a substantive offense may be liable for that offense if it was committed by another coconspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement." *United States v. Pimentel*, 83 F.3d 55, 58 (2d Cir.1996) (citations omitted). If a firearm "was carried by, or was within reach of, one defendant but not another, that other defendant may be found liable for carrying the gun ... on a *Pinkerton* theory." *United States v. Giraldo*, 80 F.3d 667, 676 (2d Cir. 1996) (citations omitted). Thus, a defendant may be guilty of a § 924(c) violation under a *Pinkerton* theory if: (1) the defendant conspired to commit a crime involving violence or drug trafficking; (2) the § 924(c) offense was committed in furtherance of the conspiracy; and (3) the offense was a reasonably foreseeable consequence of an act furthering the unlawful agreement. *See United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir.1996); *United States v. Romero*, 897 F.2d 47, 51 (2d Cir.1990). Jeres' statements during his plea allocution, as well as the plea allocutions of his co-conspirators and the non-hearsay testimony of Agent Cucinelli at the § 2255 evidentiary hearing, provide an ample basis under *Pinkerton* to conclude that Jeres cannot show that he is "actually innocent."

The existence of a conspiracy is obvious. When Judge Sand asked Jeres whether "[i]n connection with your sale of drugs, were there other people with whom you were engaged in drug sales?", Jeres said that both Rosario and Ramirez were involved in the drug transactions. Ramirez and Rosario also admitted during their plea allocutions that they were participants, along with Jeres, in a plan to sell crack cocaine. This evidence clearly demonstrates "a tacit understanding [between the conspirators] to carry out the

prohibited conduct." *United States v. Wardy*, 777 F.2d 101, 107 (2d Cir.1985).

Similarly, it cannot fairly be doubted that Rosario and Ramirez committed the § 924(c) violations in furtherance of the drug conspiracy. Rosario and Ramirez admitted during their plea allocutions that they carried guns during the cocaine sales. Jeres himself admitted that a gun was present during the drug transactions. Carrying a firearm during the drug sale easily suffices to establish that the firearm violation was committed in furtherance of the drug conspiracy. *See Salas*, 139 F.3d at 325; *Pimentel*, 83 F.3d at 58–59.

Finally, Ramirez' and Rosario's carrying of firearms during the crack cocaine sales was reasonably foreseeable. Indeed, as already noted, Jeres acknowledged at his plea allocution that there "was a gun" present at the August 27th sale. Agent Cucinelli recovered a loaded Iver Johnson revolver in the apartment where Rosario, Ramirez, and Jeres were apprehended after their futile attempt to evade arrest. A loaded Colt .45 was discovered in the apartment where the drug deals occurred. Recognizing that in the drug culture, "firearms are the tools of the trade," *United States v. Wilson*, 105 F.3d 219, 221 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 133, 139 L.Ed.2d 82 (1997), any reasonable juror would conclude that the § 924(c) violations were a reasonably foreseeable concomitant to the drug sales. *See Romero*, 897 F.2d at 51–52; *United States v. Bruno*, 873 F.2d 555, 560 (2d Cir.1989).

## II. *Factual Basis Supporting Their Guilty Pleas*

■ Upon an appeal from the denial of a § 2255 motion, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Scanio v. United States*, 37 F.3d 858, 859–60 (2d Cir.1994).

Even if Rosario's, Ramirez', and Jeres' claims were not procedurally barred, Judge Sand properly found that there was an adequate factual basis for their § 924(c) pleas.[2]

### A. *Rosario and Ramirez*

Judge Sand found sufficient evidence for Ramirez' and Rosario's pleas in that: (1) the PSRs indicated that both Rosario and Ramirez were carrying firearms during the August 27, 1992 cocaine sale; (2) Rosario stated during his plea allocution that he "carr[ied]" a firearm "[i]n connection with selling crack"; and (3) Ramirez, in response to Judge Sand's questioning during the plea allocution, stated that he "use[d] and carr[ied]" a Colt .45 in connection with the sale of drugs. Ramirez and Rosario contend that Judge Sand's reliance on their plea allocutions and the PSRs was misplaced.

#### 1. *Plea Allocutions*

■ Rosario and Ramirez contend that their admissions during their plea allocutions that they "carried" firearms do not establish that they "carried" firearms within the meaning of § 924(c). They assert that, at the time of their pleas, the word "carry" was synonymous with "use" under this Circuit's pre-*Bailey* interpretation of § 924(c). We are not convinced by their linguistic legerdemain.

First, the meaning of "carry" under § 924(c) was, at the time of Rosario's and Ramirez' pleas, consistent with the common-sense meaning of the word and was not synonymous with "use." The common-sense meaning of carry is "1. to take or support from one place to another; convey; transport ... 2. to wear, hold, or have around one." The Random House Dictionary of the English Language (2d ed.1987); *see Canady*, 126 F.3d at 358 (common-sense and dictionary definitions of "carry" suggest that object is held on one's person or transported

---

2. Judge Jacobs concurs in the result solely for the reasons set forth in this section of the opinion. In this case, the defendants failed to raise a *Bailey* argument on direct appeal (perhaps because of this Court's repeated rejections of such an argument at the time), and therefore procedurally defaulted the issue. The government, however, failed to address the defendants' procedural default (perhaps, as suggested *supra*, because of this Court's *dictum* in *Triestman v. United States*, 124 F.3d 361, 369 n. 8 (2d Cir.1997)), and therefore waived the argument. Judge Jacobs is unwilling to enforce the defendants' default while indulging the government's waiver when both sets of circumstances essentially mirror each other, and the waiver cancels out the default.

from one place to another); *see also Muscarello,* 118 S.Ct. at 1914–16 (discussing "ordinary English" meaning of "carry" under § 924(c)). In 1993, the year that Ramirez and Rosario entered their pleas, this Court defined "carry" under § 924(c) to require "at least a showing that the gun is within reach during the commission of·the drug offense." *United States v. Feliz–Cordero,* 859 F.2d 250, 253 (2d Cir.1988). Rosario's and Ramirez' statements during their plea allocutions that they "carried" firearms should be given the common-sense meaning of the term, a meaning sufficient to justify Judge Sand's denial of their motions. *See Salas,* 139 F.3d at 324; *see also United States v. Muscarello,* 106 F.3d 636, 639 (5th Cir.1997) (per curiam) (rejecting identical argument as a "legal non sequitur"), *aff'd,* — U.S. ——, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998).

### B. *Jeres*

Judge Sand, relying on the PSRs and Jeres' plea allocution, held that the evidence supported his conviction under § 924(c) as a coconspirator. Jeres contends that the statements in his plea allocution do not establish criminal liability. We disagree.

 The information adduced during the plea allocutions is sufficient to sustain Jeres' conviction under a *Pinkerton* theory. During Jeres' allocution, Judge Sand asked him: "Tell me in your own words, Mr. Jeres, what you did that leads you to believe that you are guilty of [using and carrying firearms in relation to a drug trafficking crime]." Jeres responded that he "sold crack and there was a gun and there was a witness." He also admitted that there were both a Colt .45 and an Iver Johnson revolver involved in the drug transaction. Jeres' admissions, in light of Ramirez' and Rosario's admissions that they were carrying guns during the crack sales, are sufficient on a *Pinkerton* theory of liability to establish that Jeres too was guilty of carrying a firearm under § 924(c). *See, e.g., Pimentel,* 83 F.3d at 58–59.

### C. *Information in the PSRs*

All three defendants contend that Judge Sand improperly relied on hearsay statements contained in the PSRs about the CI's

observations of the guns carried by Rosario and Ramirez. They argue that the Due Process Clause and the rules governing proceedings under § 2255 prohibit reliance on hearsay to sustain their convictions. We need not reach this issue because the movants' plea allocutions, in and of themselves, provide an adequate factual basis to support their guilty pleas.

### CONCLUSION

We have considered all the arguments raised by movants and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.