**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jon William GUESS, Defendant–
Appellant.**

**No. 98–16323.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1999

Decided Feb. 10, 2000

Dylan L. Schaffer, Riordan & Rosenthal, San Francisco, California, for the defendant-appellant.

Kenneth B. Julian, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: SNEED and PREGERSON, Circuit Judges, and CARTER,[1] District Judge.

SNEED, Circuit Judge:

A federal grand jury indicted Jon William Guess ("Appellant") on July 2, 1992, and charged him with attempting to manufacture methamphetamine ("Count One"), maintaining a place for the manufacture of methamphetamine ("Count Two"), and using and carrying a firearm in relation to a drug offense ("Count Three"). 21 U.S.C. §§ 846, 841(a)(1), 856, and 18 U.S.C. § 924(c)(1). Pursuant to a plea agreement, Appellant pleaded guilty to the first and third counts. Appellant was then sentenced to 87 months imprisonment on Count One and, having admitted ownership of the semi-automatic pistol, to 60 consecutive months imprisonment on Count Three. On April 11, 1994, following Appellant's direct appeal, this court affirmed the district court's judgment and sentence.

---

**1.** The Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

Appellant at his plea colloquy swore to having "possessed a Smith and Wesson Model 39 ... which he used to protect himself and his methamphetamine laboratory." He maintained that he lived in a terraced apartment above the laboratory, the site of his arrest. According to the district court, "[T]he Government's exhibits indicate that petitioner brought the firearm out onto the porch when the officers arrived at his residence to execute the search warrant and that the firearm was loaded and ready to fire." In one of these exhibits was a letter to defendant's counsel in which the government reported statements Appellant made at the time of his arrest. The letter stated: "After discovering the weapon on the balcony, the defendant, who was being secured by officers, volunteered that he dropped the weapon after he discovered the identity of the officers." A more extensive recitation of the facts is not necessary.

In this appeal, Appellant protests the denial of his consolidated motion, filed pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. This court granted a certificate of appealability on the issue of whether the evidence was sufficient to convict Appellant of "using" a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The certificate specifically referred to *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); and *United States v. Benboe,* 157 F.3d 1181 (9th Cir.1998).

■ We review de novo a district court decision to deny a federal prisoner's 28 U.S.C. § 2255 motion and we review its factual findings for clear error. *See United States v. Navarro,* 160 F.3d 1254, 1255 (9th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 2354, 144 L.Ed.2d 249 (1999); *Benboe,* 157 F.3d at 1183; *Sanchez v. United States,* 50 F.3d 1448, 1451–52 (9th Cir.1995).

Jurisdiction is appropriate under 28 U.S.C. § 1291. We conclude that the dis-trict court erred when it determined that Appellant "used" a weapon in violation of 924(c)(1), and we therefore reverse.

# I.

## The Procedural Default Issue

■ Before we address Appellant's argument that the evidence does not support his guilty plea to "using" a weapon in violation of Section 924(c)(1), we must determine whether the Appellant has procedurally defaulted this claim.

■ Although Appellant contested his sentence on direct appeal, he failed to challenge the validity of his plea until he filed his Section 2255 motion. Ordinarily a Section 2255 petitioner so raising a *Bailey* argument would be in procedural default. *Bousley,* 523 U.S. at 621, 118 S.Ct. 1604 (finding default where petitioner challenging his guilty plea did not raise *Bailey* claim in direct appeal); *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1588, 71 L.Ed.2d 816 (1982) (noting that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal); *Benboe,* 157 F.3d at 1184 (applying *Bousley* and finding default where petitioner challenging his guilty plea did not raise *Bailey* claim in direct appeal). To overcome such default, Appellant would have to show either (1) "cause" and actual "prejudice" to explain the default, or (2) that he was "actually innocent" of, *inter alia,* the crime for which he was indicted. *Bousley,* 523 U.S. at 622, 118 S.Ct. 1604; *see also Benboe,* 157 F.3d at 1184 (applying *Bousley* ).

■ However, the government failed initially to argue the default issue. It first raised Appellant's potential default in its response brief to this court. In *United States v. Barron,* 172 F.3d 1153 (9th Cir. 1999) (en banc), we declared, "[This court] ... will usually not allow the government to raise a petitioner's default for the first time on appeal, when it did not take the opportunity to do so before the district court." 172 F.3d at 1156. When the gov-

ernment raises a petitioner's default for the first time on appeal, this court usually finds that the government has "waived" its default defense. *Id.* *Barron* thus requires that the government show "extraordinary circumstances" which suggest that "justice would be served by overlooking the government's omission [at the district court]" in order for the government to avoid waiver. *Id.* That standard is not met here.

Appellant's failure to contest his plea on *Bailey* grounds in his direct appeal cannot be said to be so unusual " 'that its legal basis [was] not reasonably available to [government] counsel.' " *Id.* at 1157 (quoting *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). In fact, the government had been litigating how procedural default rules should apply to *Bailey* challenges in several other circuits when Appellant's Section 2255 motion was before the district court. *See id.; In re Hanserd,* 123 F.3d 922 (6th Cir.1997); *Lee v. United States,* 113 F.3d 73 (7th Cir. 1997); *Bousley v. Brooks,* 97 F.3d 284, 287 (8th Cir.1996), *rev'd sub nom. Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Barnhardt,* 93 F.3d 706 (10th Cir.1996). This litigation demonstrates that the government was familiar with default issues. It could have raised Appellant's default in the district court and it should have done so.

The government challenges this conclusion with a 1995 memorandum to all United States Attorneys in which the Acting Assistant Attorney General determined: "[W]e [*i.e.,* the government] should concede that a *Bailey* claim is cognizable under Section 2255 and that a defendant who has a valid claim under *Bailey* need not satisfy the cause and prejudice [or actual innocence] standard." The government suggests by this document that it did not believe that it had a legal basis to raise Appellant's default when Appellant's Section 2255 motion was before the district

court. Its actions belie its assertion. To repeat, the government had often raised the default issue in other district court proceedings by the time Appellant's motion was decided. *See, e.g., Bousley,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (discussing petitioner's default as raised in the district court). Therefore, justice would not be served by overlooking the government's waiver.[2] *See Barron,* 172 F.3d at 1156.

## II.

### The "Use" Issue

We now turn to the substance of Appellant's Section 2255 challenge, and we find that the record does not support Appellant's guilty plea to "use" of a firearm within the meaning of Section 924(c)(1).

The Supreme Court held in *Bailey* that a Section 924(c)(1) charge requires evidence sufficient to show an "active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." 516 U.S. at 143, 116 S.Ct. 501. Such an "active employment" understanding certainly includes "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." *Id.* at 148, 116 S.Ct. 501. The Court was clear that this was *not* an exclusive list of "uses." *See id.* ("[W]e briefly describe *some* of the activities that fall within 'active employment of a firearm . . . .' ") (emphasis added). In fact, "even an offender's reference to a firearm in his possession could satisfy § 924(c)(1)." *Id.* However, the Court also emphasized that "use" does not encompass "mere possession," especially where a weapon is kept at or near the site of a drug crime for the purpose of "embolden[ing]" the offender. *Id.* at 149, 116 S.Ct. 501. Without additional facts, such as a wrongdoer's disclosing the availability of the weapon in order to intimi-

---

2. In its response brief, the government asks this court to adopt the reasoning of *Rosario v. United States,* 164 F.3d 729, 732–33 (2d Cir. 1998) (establishing a multi-factor test to re-

lieve the government's waiver of a *Bailey* petitioner's default). We decline to do so, because *Barron* is on point and is dispositive.

date, the "inert presence" or simple "storage" of a firearm does not equal "use." *Id.*

In this case, Appellant drew the loaded weapon, clicked the safety off, and held it for the protection of his methamphetamine laboratory. Having heard noises outside, he took his weapon in hand and went patrolling on his apartment balcony. After the authorities identified themselves, Appellant dropped the gun, which was found next to its holster. With a round in its chamber, the gun was ready to fire.

However, the agents did not see or hear about the gun while it was in Appellant's hands. Since the officers were unaware of the pistol until after he was arrested, Appellant correctly argues that, in this case, he could not be incarcerated for "use." *See id.* at 149, 116 S.Ct. 501. While Appellant did more than merely "store" his pistol nearby or within the folds of his clothing, the weapon was essentially concealed. Its presence was legally inert.

The *Bailey* Court evinced concern that a too broad reading of "use" would "undermine" "virtually any function for 'carry.'" *Id.* at 146, 116 S.Ct. 501. In light of this concern, we cannot say that the instant case is an example of "use" and "carry" overlapping. To find that Appellant was using a gun would be to ignore the Supreme Court's admonition, because Appellant had not yet "converted" the gun to his "service." He was simply walking around with it. Under *Bailey,* Appellant did not "'carry out a purpose or action by means of'" a weapon. *Id.* at 145, 116 S.Ct. 501 (quoting *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)).

Based on the record, the district court found "persua[sive]" evidence that Appellant "carried" a weapon within the meaning of Section 924(c)(1). Although it could not apply the latest Supreme Court pronouncement on the meaning of "carry," *see Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), the district court probably reached the correct conclusion. In *Muscarello,* the Supreme

Court cited *Black's Law Dictionary* (6th ed.1990) which defined the phrase "carry arms or weapons" as: "To wear, bear or carry them upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of conflict with another person." *Id.* at 130, 118 S.Ct. 1911. Thus, Appellant most likely "carried" the pistol in violation of 18 U.S.C. § 924(c)(1) by simply "bear[ing] arms on his person." *Id.*

Without more, patrolling a methamphetamine laboratory with a loaded weapon, even with its safety disengaged and its holster discarded, is not "using" a gun. Consequently, all parties to the plea agreement were mistaken when Appellant pleaded guilty to "use" under the pre-*Bailey* meaning of Section 924(c)(1). Under the veneer of the word "use," Appellant actually pleaded guilty to "possessing" a gun in relation to a drug trafficking offense, which is behavior Congress did not criminalize in Section 924(c)(1). Appellant's behavior constituted only "carrying." We therefore find that "the sentence imposed [on Appellant] was not authorized by law." 28 U.S.C. § 2255. Accordingly, the district court's dismissal of Appellant's Section 2255 motion to vacate, set aside, or correct his sentence is hereby

REVERSED.

CARTER, District Judge, dissenting in part.

I concur with the majority's opinion in Part I; however, I part company from the majority in their interpretation of *Bailey v. United States. See* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). I feel the majority's interpretation of "use," as defined in *Bailey,* has been applied too narrowly. *Bailey* holds that a Section 924(c)(1) charge requires sufficient evidence to show an "active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." 516 U.S. at 143, 116 S.Ct. 501. The Court also

limited the scope of possible uses by finding that "use" does not encompass "mere possession," simple "storage," or the "inert presence," of a firearm. *Id.* at 143–149, 116 S.Ct. 501 (stating that " 'use' must connote more than mere possession" yet "silent but obvious and forceful presence of a gun on a table can be a 'use' "). Use, then, must be more than mere storage, but can be less than brandishing, striking with, or firing a firearm. *Id.* at 148, 116 S.Ct. 501.

The tortuous history of this case reveals that the defendant explicitly admitted to "use" of a firearm at three separate plea hearings. On January 25, 1993, when entering his plea before Judge Robert E. Coyle, Defendant Guess swore that he was pleading guilty because he was, in truth and in fact, guilty of the charges. As set forth in the plea agreement and explained by the Court, a Defendant uses a firearm in relation to drug trafficking when:

*First, the defendant committed the crime charged in count one of the indictment; Second, the firearm at issue was related to or played some role in that crime; and Third, the defendant knowingly used or carried the firearm in committing the crime*

In his plea, the Defendant admitted that he intended to manufacture methamphetamine and attempted to manufacture methamphetamine by renting a premises, setting up a laboratory, and acquiring chemicals to be used in the manufacture of methamphetamine. He also stated that he "possessed a Smith and Wesson, model 39, 9 mm pistol, serial number A614574 which he used to protect himself and his methamphetamine laboratory."

On February 3, 1993, as a result of a dispute about the quantity of methamphetamine involved, the parties executed an amended plea agreement. This amended plea agreement was virtually identical to the January 25, 1993 agreement, except that the potential sentences for the quantity of methamphetamine were set forth in more detail. On February 8, 1993, the parties appeared before Judge Coyle to discuss Defendant's penalties and sentence. For reasons unrelated to Defendant's "use" of a firearm, the Court allowed the Defendant to withdraw his plea.

At the pretrial conference, on March 8, 1993, Judge Crocker accepted another change of plea from Guess. The written plea agreement was virtually identical to the original plea taken on January 25, 1993 and the amended plea on February 3, 1993. The plea agreement was identical to the original as it pertained to the "use" of the firearm. Once again, the explanation of the elements of the crime of using a firearm in relation to drug trafficking were set forth in the plea agreement and explained by the court exactly as it was on January 25, 1993.

Federal Rule of Criminal Procedure 11 was not violated. Each trial judge developed an adequate factual history before accepting the separate pleas. Guess swore to possession and, most importantly, "use" of the firearm for the protection of his laboratory in his first, second, and third plea hearings. The District Courts, on three occasions and before two different judges, found that Guess brought the loaded weapon onto the balcony for *"use* to protect himself and his methamphetamine laboratory." (emphasis added) I believe that we should give deference to these factual findings, the defendant's repeated admissions of "use" and the expectation of all parties that this was truly a "use."

Guess (1) drew a loaded revolver, (2) clicked the safety off, and (3) held it for the protection of his methamphetamine laboratory. These three actions do not equate to mere possession. The balcony where the gun was found was outside defendant's sleeping quarters. The methamphetamine laboratory was located one floor below. Because the methamphetamine laboratory was located only one floor below defendant's bedroom, I do not believe that he was simply protecting his residence and/or business. Guess heard noises, took his weapon out of the holster, and, with the gun in hand, went patrolling.

Only when the authorities identified themselves did Guess drop the revolver. This revolver was found *loaded with the safety off, ready to fire.* By pulling the weapon out of the holster, he converted it to "use."

Defendant's "use" is more than "emboldening." Narcotics dealers and manufacturers have to rely on self-help because they are subject to the same violence that they often perpetrate. "Rip offs" are a common phenomenon in the drug world. Obviously, Guess and other dealers and manufacturers cannot go to the police and complain of a crime or file a civil cause of action for return of narcotics. Rather, dealers and manufacturers must take matters into their own hands. As a result, Guess's "use" of a gun demonstrated his obvious need to protect his narcotics. Unlike the innocent homeowner or even a small drug dealer who would call out hoping to frighten the intruder away, manufacturers and dealers by virtue to their profitable trade, become targets or easy marks for other criminals. In order to protect themselves, dealers such as Guess feel the need to patrol and "use" weapons. Guess had approximately one kilogram of methamphetamine to protect. Guess did not call out because his intent was to surprise the intruder, who he may have believed was another criminal bent on "ripping him off" from either his illegal monies and/or methamphetamine.

The majority argues that instead of "using" the gun, Guess was only carrying the gun. In *Bailey,* the Court found, in the consolidated petitions of Defendant Bailey and Defendant Robinson, that neither Defendant had "used" a firearm under Section 924(c)(1). *See Bailey* at 150–51, 116 S.Ct. 501 (remanding for consideration of the "carry" prong of Section 924(c)(1), which is not relevant to this Court's analysis). The Court found no "active employment" of the gun when it had been placed inside a bag in the locked car trunk. *See id.* In Robinson's case, the Court found no "active employment" when the *"unloaded, holstered"* weapon "was found locked in a footlocker in a bedroom closet." *Id.* (emphasis added). Unlike the Defendants

discussed in *Bailey,* Guess used a *loaded and unholstered* weapon, which was retrieved from an unlocked night stand, when surprised by intruders. While the majority suggests that Guess was only "carrying" the gun when he removed it from the night stand, in my opinion, he actively employed the gun when he loaded it and took the safety off so that the gun was not only prepared to fire, but activated to fire. The record is unclear as to whether the weapon was already loaded and taken from the night stand or it was loaded by the defendant when he heard noises. Nonetheless, when a loaded weapon, with the safety off, is taken on patrol, the defendant has "used" the weapon, whether or not the weapon was initially in a loaded or unloaded condition.

With all due respect to the majority, the Court's ruling may lead to the impression that only an actual confrontation will invoke "use" of a firearm. Guess should not escape a "use" enhancement simply because the police did not see him holding a weapon. The logical extension of this argument would be that there would then have to be a confrontation with an armed defendant in his home before we would find "active employment" of a firearm. In my opinion, "use" should not require an actual confrontation. By Guess's movement, loading his gun and removing its safety, he has actively employed the weapon and not merely "stored" it. By finding that Guess has not "used" or actively employed the weapon, I fear the majority has interpreted the scope of the meaning of "use" too narrowly and therefore has moved us one step closer to a doctrine of "inevitable confrontation" as a predicate for "use."