**Alawi KUHALI, Petitioner–Appellant,**

v.

**Janet RENO, Attorney General of the United States, Defendant–Appellee,**

**John J. INGHAM, District Director, Immigration and Naturalization Service; Doris Meissner, Commissioner, Immigration and Naturalization Service, Respondents–Appellees.**

**Docket No. 00–2531.**

United States Court of Appeals, Second Circuit.

Argued March 14, 2001.

Decided Sept. 27, 2001.

94

Robert D. Kolken, Buffalo, N.Y. (Eric W. Schultz, Sacks & Kolken, Buffalo, NY), of counsel and on the brief for Petitioner–Appellant.

Hugh G. Mullane, Senior Litigation Counsel, Washington, DC (David W. Ogden, Assistant Attorney General, David J. Kline, Deputy Director, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC), of counsel for Respondents–Appellees.

Before: CARDAMONE, LEVAL, Circuit Judges, and AMON *, District Judge.

* Hon. Carol B. Amon, United States District Court Judge for the Eastern District of New York, sitting by designation.

CARDAMONE, Circuit Judge:

Petitioner Alawi Kuhali appeals from a judgment entered on July 17, 2000 in the United States District Court for the Western District of New York (Arcara, J.), denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1994) against defendant Janet Reno (now John Ashcroft), Attorney General of the United States; and respondents John J. Ingham (now Frances Holmes), District Director, Immigration and Naturalization Service (INS); and Doris Meissner (now James W. Ziglar), Commissioner, INS (collectively, the government). In resolving the issues raised on this appeal we are thrust into an infinitely complex area of immigration law, requiring us to approach the subject carefully, one step at a time.

Kuhali, a permanent resident alien, is currently being detained by the government pending removal from the United States on the basis of a 1980 federal criminal conviction for conspiracy to export firearms and ammunition without a license. In his petition, Kuhali challenges the decision of the Board of Immigration Appeals (Board) that his crime constitutes both a "firearms offense" and an "aggravated felony," thereby warranting his removal under recent amendments to federal immigration statutes. He further contends that retroactive application of the newly revised statutes violates due process. The government responds that removal is appropriate and that Kuhali's petition should be dismissed for lack of subject matter jurisdiction. For reasons set forth below, we conclude that jurisdiction over Kuhali's habeas petition is proper, and the district court's denial of the petition on the merits should be affirmed.

## BACKGROUND

Petitioner Kuhali was born in Radda, Yemen on March 18, 1940, and was admitted to the United States as a legal permanent resident on December 4, 1976. On August 8, 1980 he was convicted following a plea of guilty in the United States District Court for the Eastern District of Michigan to conspiracy to export firearms and ammunition without a license, in violation of 18 U.S.C. § 371 (1994) and 22 U.S.C. § 2778 (1994 & Supp. V 1999). His sentence included a prison term of one year, of which all but 180 days was suspended, followed by two years of probation.

Nearly 19 years later, on January 13, 1999, the INS served Kuhali with notice of charges that he was subject to removal on the two grounds that his crime of conviction constituted an "aggravated felony" and a "firearms offense" pursuant to § 237(a)(2)(A)(iii) and (a)(2)(C) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii) & (a)(2)(C) (1994 & Supp. V 1999), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, Div. C, § 305(a)(2), 110 Stat. 3009–546, at 3009–597 to 3009–598. The INS took Kuhali into custody pending a determination of his removal status.

Following an administrative hearing, an immigration judge on March 31, 1999 concluded that Kuhali's crime of conviction qualified as a "firearms offense," but not as an "aggravated felony." The immigration judge accordingly granted petitioner's request for a voluntary departure and entered an alternative removal order, since only conviction for an "aggravated felony" would have precluded discretionary relief. *See* INA § 240B(a)(1) & (b)(1)(C), 8 U.S.C. § 1229c(a)(1) & (b)(1)(C) (1994 & Supp. V 1999) (voluntary departure provisions); *United States v. Pacheco*, 225 F.3d 148, 161 (2d Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 2246, 150 L.Ed.2d 234

(2001). Petitioner appealed the immigration judge's "firearms offense" ruling to the Board, and the INS cross-appealed the "aggravated felony" determination. During the course of the administrative appeal, Kuhali was released on bond. On July 29, 1999 the Board found him removable on both grounds, vacated the grant of a voluntary departure, and ordered that petitioner be deported.

On September 24, 1999 Kuhali filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of New York. The petition challenged the Board's ruling that his conviction qualified as a "firearms offense" and as an "aggravated felony," and also raised the argument—one he had presented to the Board—that the retroactive application of IIRIRA to his 1980 conviction violated his right to due process. Respondents opposed the petition on the merits, and also filed a motion to dismiss for lack of subject matter jurisdiction. On July 17, 2000 Judge Arcara entered an order accompanied by a written opinion denying respondents' motion and denying Kuhali's petition on the merits. Kuhali filed this appeal, and we granted his motion for a stay of removal pending its disposition.

## DISCUSSION

### I Standard of Review

■ On appeal from the denial of a habeas petition brought pursuant to 28 U.S.C. § 2241, we review the merits of the petition and any other legal questions pertaining to subject matter jurisdiction *de novo*. *St. Cyr v. INS*, 229 F.3d 406, 409 (2d Cir.2000) (jurisdiction), *aff'd*, —— U.S. ——, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996) (merits).

### II Subject Matter Jurisdiction

Because removal proceedings against petitioner began after April 1, 1997, the permanent provisions of IIRIRA govern this case. *See* IIRIRA § 309(a), 110 Stat. at 3009–625; *Henderson v. INS*, 157 F.3d 106, 117 (2d Cir.1998). As amended by those permanent provisions, INA § 242(a)(1) and (b)(2) generally require that challenges to final removal orders be asserted on petition for review to the courts of appeals. *See* 8 U.S.C. § 1252(a)(1) & (b)(2) (1994 & Supp. V 1999) (as amended by IIRIRA § 306(a), 110 Stat. at 3009–607 to 3009–612). At the same time, INA § 242(a)(2)(C) creates an exception to this general rule by eliminating our jurisdiction to hear petitions for review when brought by certain criminal aliens: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title...." 8 U.S.C. § 1252(a)(2)(C).

■ This jurisdictional bar, as the Supreme Court has recently stated, does not explicitly mention a repeal of habeas jurisdiction and therefore does not deprive a federal court of its habeas jurisdiction under 28 U.S.C. § 2241 with respect to criminal aliens challenging final orders of removal. *St. Cyr*, 121 S.Ct. at 2287; *see also id.* (remaining habeas jurisdiction extends at least to "important question[s] of law"); *Calcano–Martinez v. INS*, 232 F.3d 328, 343 (2d Cir.2000) (remaining habeas jurisdiction extends to all "purely legal claims"), *aff'd*, —— U.S. ——, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001). Thus, it would appear at first blush that habeas jurisdiction under 28 U.S.C. § 2241 is proper with respect to Kuhali following the Board's decision.

■ The government notes, however, that the jurisdictional bar of INA § 242(a)(2)(C) is predicated on the facts of (1) alienage and (2) removability under an enumerated offense, and that we can determine whether these threshold "jurisdictional facts" have been properly established on a petition for direct review. *Sui v. INS*, 250 F.3d 105, 110 (2d Cir.2001); *Bell v. Reno*, 218 F.3d 86, 89 (2d Cir.2000), *cert. denied*, 531 U.S. 1081, 121 S.Ct. 784, 148 L.Ed.2d 680 (2001). Hence, the government declares—to the extent Kuhali contests whether his offense renders him removable—he was required to challenge that jurisdictional fact on petition for direct review in this Court, since no habeas jurisdiction exists to do so. The government emphasizes the general rule in INA § 242(a)(1) favoring petitions for direct review, and highlights that no unconstitutional suspension of the writ of habeas corpus occurs when Congress divests the district courts of habeas jurisdiction and substitutes "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).

■ The government's argument is not without some force. *See Santos v. Reno*, 228 F.3d 591, 597 (5th Cir.2000); *Rivera–Sanchez v. Reno*, 198 F.3d 545, 547–48 (5th Cir.1999) (per curiam); *see also Akinwale v. Reno*, 216 F.3d 1273, 1279 n. 10 (11th Cir.2000) (noting but declining to address similar argument in transitional rules case). We do not doubt Congress' power to mandate adequate and effective substitutes for habeas review. *See St. Cyr*, 121 S.Ct. at 2287 n. 38; *Calcano–Martinez*, 232 F.3d at 341. But, the reason the government's argument fails is that Congress has provided no such substitute remedy in this context. The legislature has provided only one remedy in

INA § 242 for aliens subject to a final removal order—namely, a petition for direct review in the courts of appeals—and has at the same time enacted a jurisdictional bar against criminal aliens attempting to pursue that remedy. *See Calcano–Martinez*, 232 F.3d at 342 ("Without habeas jurisdiction to review final orders, there is currently no judicial review at all of a removal order issued against a non-citizen who is ordered removable because he or she committed a certain crime."). Absent the provision of a substitute remedy, the government's argument that our habeas jurisdiction has been supplanted necessarily fails.

■ Hence, although we do retain jurisdiction to determine whether the jurisdictional bar of INA § 242(a)(2)(C) applies, the fact that a court may entertain such jurisdictional issues does not mean that Congress has provided a substitute forum for the resolution of those issues on the merits. Our authority to address such "jurisdictional facts" stems not from Congress' creation of a particular remedy, but rather from the inherent jurisdiction of Article III federal courts to determine their jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction."); 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3536, at 535 (2d ed. 1984) (" 'Jurisdiction to determine jurisdiction' refers to the power of a court to determine whether it has jurisdiction over the parties to and the subject matter of a suit."). Thus, to say that a court possesses the authority to ascertain its jurisdiction over a matter is not tantamount to saying that the legislature has designated the court as a forum for resolution on the merits of those issues

that happen to underlie the jurisdictional inquiry. *Cf. Steel Co.*, 523 U.S. at 92–93, 118 S.Ct. 1003 (cautioning against importing issues from the merits of an action into the jurisdictional inquiry).

■■■ At the same time, we need not address whether the doctrine of procedural default might warrant requiring that an alien raise any challenges to so-called "jurisdictional facts" on petition for direct review in the court of appeals, rather than on habeas petition. It is well-settled that the doctrine of procedural default is prudential rather than jurisdictional in nature. *E.g., Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir.2000) ("The doctrine of procedural default is based on considerations of comity and finality, and not on a jurisdictional limitation on the power of a federal court ... to look beyond a state procedural default and consider the merits of a defaulted claim ...."); *see* 28 James Wm. Moore et al., Moore's Federal Practice § 671.07[1], at 671–121 (3d ed.2001); *see also* 28 *id.* § 671.06[1], at 671–100 (exhaustion of remedies). Yet the government has consistently framed its motion to dismiss exclusively in jurisdictional terms, without mentioning the doctrine of procedural default. We have no doubt that the government knows how to raise such a point in litigation when it wishes to do so. *E.g., Garcia–Guzman v. Reno*, 65 F.Supp.2d 1077, 1083 (N.D.Cal.1999); *Alwaday v. Beebe*, 43 F.Supp.2d 1130, 1132 (D.Or.1999).

■■■ Having failed to raise the issue of procedural default before the district court or us, the government has forfeited or waived the argument. *See Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998). Although we have discretion to raise the issue ourselves, we have emphasized that "appellate courts should not lightly raise the issue of ... procedural default *sua sponte*." *Id.* at 732–33. Unlike *Rosario*, where the procedural default was "manifest from the record," *id.* at 733, here it is not clear to what extent Kuhali's failure to seek direct review resulted from a strategic choice by his counsel or, alternatively, from the government's apparent delay in mailing him a copy of the Board's decision. More fundamentally, whether the doctrine of procedural default should apply here depends on a careful weighing of prudential considerations, *see Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 633–34 (2d Cir.2001), a difficult legal subject which neither of the parties has adequately briefed. Finally, because we conclude in the discussion that follows that Kuhali's conviction falls under INA § 242(a)(2)(C), his habeas petition would still be proper with respect to his constitutional claims even if his other claims were defaulted, and we see no institutional advantage to be gained from raising the question of default *sua sponte*.

Accordingly, we conclude that the district court properly had jurisdiction of Kuhali's petition for a writ of habeas corpus in the first instance, and jurisdiction also properly lies in this Court on appeal. In so ruling, we express no view on whether the doctrine of procedural default should require that a criminal alien raise any challenge to jurisdictional facts on petition for direct review in the court of appeals rather than on a habeas petition in district court.

### III Removal as an Alien Convicted of a "Firearms Offense"

On the merits of his appeal, Kuhali challenges the Board's determination that his conviction for conspiracy to export firearms and ammunition, as defined by 18 U.S.C. § 371 and 22 U.S.C. § 2778, qualifies as a "firearms offense" rendering him removable under INA § 237(a)(2)(C), 8

U.S.C. § 1227(a)(2)(C). He avers, first, that the Board and the district court erred in reasoning that the crime of illegally exporting firearms necessarily entails the *possession* of firearms as an element; and second, that the INS failed to meet its burden of demonstrating that his offense conduct actually involved firearms, and not simply ammunition. We consider these arguments in turn.

### A. *Possession of Firearms*

#### 1. General Principles

■ On review of a removal decision, we owe no deference to the Board in its interpretation of criminal statutes that it does not administer, *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir.2000), but grant *Chevron* deference to the Board's construction of the INA, which it does administer, *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (citing *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Bell*, 218 F.3d at 90. Under the *Chevron* standard, we adhere to Congress' purpose where the INA clearly speaks to the point in question, but if the INA is silent or ambiguous, then we must defer to any reasonable interpretation of the statute adopted by the Board as the entity charged by Congress with the statute's enforcement. *Aguirre–Aguirre*, 526 U.S. at 424–25, 119 S.Ct. 1439.

■ Accordingly, where the Board has construed the terms of a ground for removal identified in the INA, we defer under *Chevron* to that construction. But where the Board has further determined that an offense, as defined by a particular criminal statute, falls within those terms, we review that determination *de novo. Dalton v. Ashcroft*, 257 F.3d 200, 203–04 (2d Cir.2001); *Sui*, 250 F.3d at 112–13;

*Sutherland*, 228 F.3d at 173–75; *Michel v. INS*, 206 F.3d 253, 262 (2d Cir.2000).

#### 2. The Removal Statute: INA § 237(a)(2)(C)

■ INA § 237(a)(2)(C) provides for deportation based on conviction for certain "firearms offenses"

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

8 U.S.C. § 1227(a)(2)(C).

The Board had construed predecessor statutes "as providing for the deportability of any alien who, at any time after entry, has been convicted under any law of a crime of which the possession or carrying of a firearm or destructive device is an essential element." *In re Kuhali*, No. A35 283 015, slip op. at 2 (BIA July 29, 1999) (unpublished decision) (citing, *inter alia*, *In re Lopez–Amaro*, 20 I. & N. Dec. 668, 672–73 (BIA June 1, 1993), *aff'd, Lopez–Amaro v. INS*, 25 F.3d 986 (11th Cir. 1994)). The Board applied this same reasoning to the post-IIRIRA version of the statute. Although INA § 237(a)(2)(C) explicitly encompasses a conviction for possessing or carrying firearms or for conspiracy to do so, the provision is silent as to other convictions that involve possessing or carrying firearms only as an element of the substantive crime. Because the INA is silent, under *Chevron*, we must ask whether the Board's construction is a reasonable one, and readily conclude that it is.

In particular, the Board's reading of INA § 237(a)(2)(C) to encompass "possess-

ing" and "carrying" firearms not simply as crimes in their own right, but also as elements of other crimes, is reasonable in light of the statute's expansive text and history. *See Sui,* 250 F.3d at 114 (Board need not adhere to formal label given to offense). Conviction for illegally possessing or carrying certain weapons has been a statutory ground for deportation for several decades, even before Congress expanded the statute to include firearms in the covered class of weapons. *E.g., Zinnanti v. INS,* 651 F.2d 420, 421 (5th Cir. Unit A July 1981) (per curiam); *Gutierrez–Rubio v. INS,* 453 F.2d 1243, 1244 & n. 1 (5th Cir.1972) (per curiam); *see also* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, Tit. VII, Subtitle J, § 7348, 102 Stat. 4181, 4473; *Cato v. INS,* 84 F.3d 597, 601 (2d Cir.1996).

Subsequent amendments have expanded the statute to encompass the sale, use, and ownership of firearms, as well as attempts and conspiracies to commit any of the listed acts. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, Tit. II, § 203(b), 108 Stat. 4305, 4311; Immigration Act of 1990, Pub.L. No. 101–649, Tit. VI, § 602(a), 104 Stat. 4978, 5080; *Hall v. U.S. I.N.S.,* 167 F.3d 852, 855–56 (4th Cir.1999). As the Fourth Circuit has commented, the present statute is "exceedingly broad" and "evinces an expansive purpose—to render deportable those aliens that commit firearms offenses of any type." *Hall,* 167 F.3d at 855. We agree and think it would be incongruous to read the statute to encompass the possession or carrying of firearms when committed as crimes in their own right, but not when committed as necessary elements of other crimes.

Moreover, in determining whether "possessing" or "carrying" firearms is an element of these other crimes, the plain language of INA § 237(a)(2)(C) supports the adoption of a categorical approach that looks to the elements of the offense as defined by statute, rather than to the particular facts of the alien's criminal activity. INA § 237(a)(2)(C) refers to "[a]ny alien who is ... convicted" of—not any alien who has committed—certain firearms offenses, thereby suggesting that a court look at the conviction itself as opposed to the underlying conduct. *See Taylor v. United States,* 495 U.S. 575, 600–01, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (sentence enhancement provision); *United States v. Palmer,* 68 F.3d 52, 55 (2d Cir. 1995) (same). Such an approach also enjoys the virtues of practicality and even-handed application, since examining the transcript of the plea colloquy (or the trial) to determine the actual facts of the crime could prove burdensome and produce arbitrary results. *See Taylor,* 495 U.S. at 601–02, 110 S.Ct. 2143; *Palmer,* 68 F.3d at 55; *see also Dalton,* 257 F.3d at 203–05 (applying categorical approach to "crime of violence" under 18 U.S.C. § 16(b)). *See generally Sui,* 250 F.3d at 116–18 & nn. 10–11 (discussing *Taylor* and collecting decisions).

As a consequence, we conclude that the Board's interpretation of INA § 237(a)(2)(C) to encompass convictions of crimes for which possessing or carrying firearms is an element, is a reasonable one. *See also Valerio–Ochoa v. INS,* 241 F.3d 1092, 1096 (9th Cir.2001) (approving the Board's reading), *cert. denied,* —— U.S. ——, 122 S.Ct. 55, —— L.Ed.2d —— (2001); *Hall,* 167 F.3d at 855–56; *Vue v. INS,* 92 F.3d 696, 699–700 (8th Cir.1996); *Lopez–Amaro,* 25 F.3d at 989–90.

### 3. The Criminal Statute: 22 U.S.C. § 2778

Turning to the nature of Kuhali's offense, the crime of conspiracy to export

firearms and ammunition without a license is defined by two statutes: 22 U.S.C. § 2778, which generally prohibits the unlicensed export of certain defense articles, and 18 U.S.C. § 371, which prohibits conspiracy to commit a federal offense. Because INA § 237(a)(2)(C) explicitly encompasses conspiracies to commit listed offenses, .and because possession by one member of a conspiracy is imputed to all other members, *see, e.g., United States v. Smith,* 918 F.2d 1551, 1557 (11th Cir. 1990), our inquiry is limited to determining whether possession of firearms is an element of the substantive crime defined by § 2778.

Congress enacted § 2778 into law as part of the Arms Export Control Act, Pub.L. No. 94–329, Tit. II, § 212(a)(1), 90 Stat. 729, 744–45 (1976). As we have explained, the Arms Export Control Act

> establishes the basic requirements for the sale and export of American-made military equipment and ammunition. to foreign purchasers. Before a private exporter may sell any article contained on the [U.S. Munitions List] he must apply for an export license from the U.S. State Department's Office of Munitions Control. The exporter must include in the application a description of the arms, their ultimate destination, and their intended use. The Munitions Control Office then decides whether to grant the license based upon the information contained in the application. If an export license is granted, the exporter must present it to the Customs Service at the time of export.

*United States v. Schwartz,* 924 F.2d 410, 416 (2d Cir.1991).

Within this framework, § 2778 provides: "[N]o defense articles or defense services designated by the President under subsection (a)(1) of this section may be exported or imported without a license for such export or import, issued in accordance· with this chapter and regulations issued under this chapter. . . ." 22 U.S.C. § 2778(b)(2); *id.* § 2778(c) (criminalizing willful violations of "any provision of this section"); *see also* 22 C.F.R. § 121.1 (2001) (Munitions List); *id.* § 121.9(b) (2001) ("firearm" definition); *id.* § 123.1–.27 (2001) (export license provisions). Conviction under § 2778(b)(2) thus entails proof of four elements: the (1) willful (2) export or attempted export (3) of articles listed on the United States Munitions List (4) without a license. *United States v. Covarrubias,* 94 F.3d 172, 175 (5th Cir.1996); *United States v. Murphy,* 852 F.2d 1, 6–7 (1st Cir.1988); *United States v. Beck,* 615 F.2d 441, 449–50 (7th Cir.1980).

Citing the fourth element, Kuhali contends that violation of § 2778 is essentially a licensing offense, not a firearms offense, since the act of exporting firearms is prohibited only if the defendant did so without first obtaining a license. But under the Board's reading of INA § 237(a)(2)(C), discussed above, the only relevant issue is whether possessing or carrying firearms is an element of the offense as defined by statute. To determine that issue, we need look no further than the second element, the act of export (or attempted export).

The regulations implementing § 2778 define the term "export" broadly to include "[s]ending or taking a defense article out of the United States in any manner." 22 C.F.R. § 120.17(a)(1) (2001). This definition fits comfortably within other legal definitions of "export," *e.g.,* Black's Law Dictionary 600 (7th ed.1999) ("[t]o send or carry abroad"), as well as with the common usage of the term, *e.g.,* Webster's New Collegiate Dictionary 400 (1981) ("to carry or send (as a commodity) to some other place (as another country)"). The key question is whether this definition nec-

essarily entails some degree of possession. We think it does.

■ In the legal sense of the word, "possession" comes in two varieties: actual and constructive. *E.g., United States v. Samaria*, 239 F.3d 228, 239 (2d Cir.2001). Actual possession corresponds to the everyday sense of tangible, physical dominion or control over an object. *See United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object" without actually possessing it. *Id. See generally Black's Law Dictionary* 1183 (defining actual and constructive possession and discussing distinction). When applying federal criminal statutes for which the possession of a weapon is an element, we have recognized both notions of possession as valid bases for convicting. *See, e.g., United States v. Toner*, 728 F.2d 115, 128 (2d Cir.1984).

Taking "possession" in the latter sense of the power to exercise dominion and control, we agree with the Board and the district court that some element of possession is present whenever a defendant "exports" a defense article. In other words, the power to send or take a commodity out of the country necessarily implies—because of the exercise of dominion or control—at least constructive possession of the commodity.

This reading of § 2778 finds strong support in the construction the Supreme Court has given to similar criminal statutes. In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), for example, the Supreme Court affirmed the vacatur of a conviction under then 18 U.S.C. § 1202(a), which imposed criminal penalties on any person in certain classes (including illegal aliens) "who receives, possesses, or transports in commerce or affecting commerce . . . any firearm." *Id.*

at 337 & n. 1, 92 S.Ct. 515. The pivotal point raised before the Supreme Court was whether a conviction for mere possession, as opposed to transportation, of firearms required proof that the firearms had been "in commerce or affecting commerce." *Id.* at 339, 92 S.Ct. 515.

The Court answered that question in the affirmative on the rationale, in part, that the statute would make no sense if the phrase "in commerce or affecting commerce" were construed to apply only to the offense of transporting firearms. *Id.* at 340–41, 92 S.Ct. 515. It reasoned that "[s]ince virtually all transportations, whether interstate or intrastate, involve an accompanying possession or receipt, it is odd indeed to argue that on the one hand the statute reaches all possessions and receipts, and on the other hand outlaws only interstate transportations." *Id.* Although the government had asserted "that 'transports' includes the act of 'causing a firearm to be transported,' and therefore would connote an offense separate in some cases from 'receives' or 'possesses,'" the Court rejected this assertion and stated that such a distinction found "no support in any arguable purpose of the statute." *Id.* at 341 & n. 7, 92 S.Ct. 515.

Just as the *Bass* Court reasoned that the term "transport" implied some element of possession or receipt, we too think the term "export" as used in § 2778 implies some element of possession. Even if "export" could be limited to the sense of "causing a commodity to be exported," by analogy to the government's argument in *Bass*, we think that the very act of causing the commodity to be exported requires sufficient power over the commodity to give rise to constructive possession. Moreover, although the *Bass* decision dates back nearly 30 years, we have no reason to believe that the Supreme Court would decide the issue differently were it

presented today. *See Muscarello v. United States*, 524 U.S. 125, 134, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (" 'Carry' implies personal agency and some degree of possession, whereas 'transport' does not have such a limited connotation and, in addition, implies the movement of goods in bulk over great distances."); *Bailey v. United States*, 516 U.S. 137, 144, 149–50, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("Use" of a firearm entails "more than possession" and rises to the level of "active employment."); *see also United States v. Richards*, 967 F.2d 1189, 1195 (8th Cir. 1992) ("[T]he ordinary meaning of the term 'transport' ... involv[es] an element of possession and an element of movement.").

■ Thus, construing § 2778 *de novo*, we agree with the Board and the district court that a conviction for the unlicensed export of listed defense articles necessarily entails an element of possession. We hold therefore that conspiracy to export firearms in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 371 constitutes a removable firearms offense under INA § 237(a)(2)(C).

### B. *Firearms Versus Ammunition*

■ As noted earlier, Kuhali also declares that the government failed to meet its burden of proving at the removal hearing that his offense actually involved firearms, and not simply ammunition. In particular, he notes that the INS proffered only copies of the indictment and the judgment of conviction, and he urges that the INS should have been required to submit a transcript of the plea colloquy as well, so that the Board and the district court could review the factual basis for his plea.

The INS unquestionably bears the burden of proving by "clear and convincing evidence that the respondent is deportable as charged." 8 C.F.R. § 240.8(a) (2001). A defendant may also clearly be convicted

under 22 U.S.C. § 2778 for exporting *either* firearms or ammunition, since the U.S. Munitions List includes both under separate categories. *See* 22 C.F.R. § 121.1 (Categories I, III). Hence, the only issue is whether the immigration judge and the Board were justified in relying on Kuhali's judgment of conviction, which is signed by a federal district judge and states that Kuhali was convicted of "the offense(s) of conspiracy to export firearms & ammunition without a license in violation of Section 371, Title 18 United States Code."

■ Absent any reasonable challenge to its validity, we think the clear language of the judgment of conviction should control the determination of what offense an alien actually committed. A judgment of conviction is competent evidence. In the immigration context, a number of circuits (including our own) have held that when a criminal statute is "divisible" into multiple categories of offense conduct—some but not all of which constitute removable offenses—a court may refer to the record of conviction, particularly the judgment of conviction, to determine whether the alien's criminal conviction falls within a category that would justify removal. *Sui*, 250 F.3d at 118 (2d Cir.); *Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir.2000); *Vue*, 92 F.3d at 700–01 (8th Cir.); *accord In re Pichardo–Sufren*, 21 I. & N. Dec. 330, 1996 WL 230227, 1996 BIA LEXIS 12, at *10–*11 (BIA Apr. 23, 1996); *see also United States v. Danielson*, 199 F.3d 666, 671–72 (2d Cir.1999) (per curiam) (where statute encompasses both violent and non-violent conduct, sentencing court may rely on record of conviction to decide whether prior conviction was "crime of violence" for purposes of determining base offense level); *United States v. Hill*, 131 F.3d 1056, 1063–65 & n. 9 (D.C.Cir.1997) (collecting circuit decisions) (same).

Here, because § 2778 encompasses the export not only of firearms but also of ammunition, and because only the former crime constitutes a removable offense, it was entirely proper for the immigration judge and the Board to rely on the judgment of conviction to ascertain whether Kuhali had in fact conspired to export firearms. The judgment of conviction in this case states plainly and unambiguously that Kuhali conspired to export "firearms & ammunition." It is not in the least vague-it does not state, for instance, that Kuhali conspired to export "firearms and/or ammunition" or "firearms/ammunition." Thus, the INS was not required to present additional evidence. The judgment of conviction, in and of itself, provided clear and convincing evidence that Kuhali conspired to export firearms.

Although Kuhali now argues that a plea under § 2778 for conspiracy to export only ammunition, and not firearms, in theory would have been sufficient to support his conviction, he does not contend—nor has he ever contended—that he conspired only to export ammunition. He also fails to provide any evidence to rebut the INS' *prima facie* case, such as a transcript of his plea colloquy. Kuhali's argument is based therefore solely on conjecture. A hypothetical argument, of course, will not create an ambiguity that does not otherwise exist. Consequently, Kuhali is removable as an alien convicted of a firearms offense under INA § 237(a)(2)(C).

### IV Removal as an Alien Convicted of an "Aggravated Felony"

█ As noted, petitioner also challenges the conclusion of the Board and the district court that he is removable as an alien convicted of an "aggravated felony" under INA § 237(a)(2)(A)(iii). Because his eligibility for a voluntary departure hinges on this point, *see* 8 U.S.C. § 1229c(b)(1)(C),

the question is not mooted by the above determination that he is removable as an alien convicted of a firearms offense. Kuhali asserts that the Board erred in reasoning that conspiracy to export firearms constitutes a firearms "trafficking" offense under INA § 101(a)(43)(C) (1994 & Supp. V 1999), thereby qualifying his crime as an "aggravated felony" under INA § 237(a)(2)(A)(iii).

### A. *The Removal Statute: INA § 237(a)(2)(A)(iii) & INA § 101(a)(43)*

█ INA § 237(a)(2)(A)(iii) declares that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). In turn, INA § 101(a)(43) defines "aggravated felony" to include "illicit trafficking in firearms or destructive devices (as defined in section 921 of Title 18) or in explosive materials (as defined in section 841(c) of that title)," 8 U.S.C. § 1101(a)(43)(C), as well as "an attempt or conspiracy to commit an offense described in this paragraph," *id.* § 1101(a)(43)(U).

In its decision, the Board construed the term "trafficking" as used here in light of its decision in *In re Davis,* 20 I. & N. Dec. 536, 541, 1992 WL 443920 (BIA May 28, 1992), which in the context of narcotics borrowed the definition of "trafficking" set forth in Black's Law Dictionary 1240 (5th ed. 1979): "Trading or dealing in certain goods...." *In re Kuhali,* No. A35 283 015, slip op. at 4. Hence, the Board in defining "trafficking" said the essential sense of the term was its business or merchant nature, *i.e.,* trading, selling or dealing in goods. *Id.* To characterize an activity as trafficking or a participant as a trafficker, according to the Board, requires only a minimal degree of involvement. *Id.*

Because the INA does not define the term "trafficking" in § 101(a)(43)(C), and the Board construed the term to hinge on the business or merchant nature of the alien's firearms conviction, as exemplified by his acts of trading or dealing, we must ask under *Chevron* whether the Board's construction is a reasonable one. We think it is. As with the INA's firearms offense provision, discussed above, the statutory focus in § 237(a)(2)(A)(iii) on "[a]ny alien who is convicted" of an aggravated felony suggests that the crime of conviction should be analyzed categorically, and the Board's specific reading of the term trafficking comports well with the legal and everyday usages of that term. *See also* Webster's New Collegiate Dictionary 1229 (defining "traffic" as a noun to include "the business of bartering or buying and selling" and "import and export trade," and as a verb to include "trade, barter").

### B. *The Criminal Statute: 22 U.S.C. § 2778*

Kuhali raises two arguments as to why the unlicensed export of firearms under 22 U.S.C. § 2778 should not be considered "illegal trafficking in firearms" under INA § 101(a)(43)(C). First, he repeats the assertion that § 2778 defines what is essentially a licensing offense, and not a trafficking offense, since the act of exporting firearms is prohibited only in the absence of a valid license. Again, that consideration is immaterial under the Board's reading of INA § 101(a)(43)(C). All that must be decided is whether the offense has a business or merchant nature, and to answer that question we again focus simply on the element of export.

Second, petitioner contends that the act of export does not exhibit a business or merchant nature, since the term "export" as defined in the applicable regulations as

well as in ordinary usage requires only transportation across international borders, with or without an accompanying commercial transaction. *See* 22 C.F.R. § 120.17(a)(1) ("[s]ending or taking a defense article out of the United States in any manner"); Black's Law Dictionary 600 ("[t]o send or carry abroad"); Webster's New Collegiate Dictionary 400 ("to carry or send (as a commodity) to some other place (as another country)"). In petitioner's view, an alien could be convicted under § 2778 simply for carrying firearms out of the country for personal use, regardless of whether the person later sells or trades the firearms.

But, as the Board and the district court reasoned, this argument founders when seen in the context of the Arms Export Control Act in general, as well as § 2778 in particular. As originally enacted and presently codified, the Arms Export Control Act sets forth a broad national policy with respect to the international trade in defense articles:

> It shall be the policy of the United States to exert leadership in the world community to bring about arrangements for reducing the international trade in implements of war and to lessen the danger of outbreak of regional conflict and the burdens of armaments. United States programs for or procedures governing the export, sale, and grant of defense articles and defense services to foreign countries and international organizations shall be administered in a manner which will carry out this policy.

Pub.L. No. 94–329, Tit. II, § 202(a), 90 Stat. at 734 (codified as amended at 22 U.S.C. § 2751 (1994 & Supp. V 1999)). The Arms Export Control Act thus originally contained, and continues to contain, numerous provisions governing the distribution and sale of defense articles and defense services to foreign countries. *See*

*generally id.* §§ 201–218, 90 Stat. at 734–48 (codified as amended at 22 U.S.C. §§ 2751 to 2799aa–2 (1994 & Supp. V 1999)).

Within this broader statutory context, it is readily apparent that the purpose of § 2778 is to restrict the international market in defense articles by closely controlling the flow of such articles out of this country. As the House Report accompanying the legislation confirmed, "This provision legislates major reforms in the sales of weapons abroad through the control of licenses with respect to arms exports and imports." H.R.Rep. No. 94–1144, at 35 (1976), *reprinted in* 1976 U.S.C.C.A.N. 1378, 1411. Indeed, the language of § 2778 reflects this commercial purpose in its repeated references to controlling the exchange of firearms in international commerce. 22 U.S.C. § 2778(a)(1) ("[T]he President is authorized to control the import and the export of defense articles."); *id.* § 2778(a)(3) ("[T]he President may require that any defense article or defense service be sold under this chapter as a condition of its eligibility for export."); *id.* § 2778(b)(1)(A)(i) ("[E]very person . . . who engages in the business of manufacturing, exporting, or importing any defense articles or defense services designated by the President . . . shall register with the United States Government agency charged with the administration of this section.").

The criminal prohibition in § 2778 therefore reflects Congress' judgment that the export of firearms is inextricably intertwined with foreign commerce in firearms, insofar as such export increases the supply of firearms available to the international market. In light of this legislative judgment, we cannot adopt petitioner's argument that the unlicensed export of firearms does not exhibit a business or merchant nature and does not constitute

commercial "dealing" in firearms. *See also* Black's Law Dictionary 405 (defining "deal" as "to distribute"); Webster's New Collegiate Dictionary 288 (same). It is settled in other areas of federal law that the transportation of goods across political boundaries is a quintessentially commercial activity. *E.g., United States v. Lopez,* 514 U.S. 549, 572, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (Kennedy, J., joined by O'Connor, J., concurring) ("Even the most confined interpretation of 'commerce' would embrace transportation between the States."). In fact, the recognition that export constitutes a commercial use of goods has informed the construction of other federal criminal statutes. *E.g., Smith v. United States,* 508 U.S. 223, 234–35, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("Thus, it is clear from [18 U.S.C.] § 924(d)(3) that one who transports, exports, sells, or trades a firearm 'uses' it within the meaning of § 924(d)(1)," since "each offense involves use as an item in commerce.").

The very decisions Kuhali cites to support the point he makes only confirm the commercial nature of the export activity criminalized by § 2778. *See Beck,* 615 F.2d at 450 (defendant convicted under § 2778 "did not merely purchase guns in South Africa which had already been exported" but "worked actively . . . in developing the export plan"); *United States v. Lizarraga–Lizarraga,* 541 F.2d 826, 827 (9th Cir.1976) (defendant admitted "that he purchased the ammunition and that he intended to export it to Mexico," but his defense was "that he had no knowledge that his conduct violated the law"). Kuhali's reliance on *In re Vasquez–Muniz,* Interim Dec. 3440, 2000 WL 1782868, 2000 BIA LEXIS 19 (BIA Dec. 1, 2000), is similarly misplaced. That decision addressed another provision of the INA that explicitly incorporates certain federal crimes for which a nexus with interstate commerce is a jurisdictional element of the

offense; applying its "hypothetical felony" approach, the Board reasoned that the provision also encompassed only those state crimes whose elements adequately matched those of the listed federal crimes. *Id.*, 2000 BIA LEXIS 19, at *3–*5, *22 (citing INA § 101(a)(43)(E)); *see also Steele v. Blackman*, 236 F.3d 130, 135–38 (3d Cir.2001) (discussing Board's "hypothetical felony" approach). In the present case, by contrast, the Board has reasonably construed INA § 101(a)(43)(C), which does not list specific federal crimes, more broadly to encompass all firearms offenses exhibiting a business or merchant nature, regardless of any nexus with commerce as an element of the offense or of a similar "match" between elements.

 As a consequence, construing § 2778 *de novo*, we hold that a conviction for the unlicensed export of firearms necessarily exhibits a business or merchant nature, as required to constitute a firearms "trafficking" offense under the Board's reading of INA § 101(a)(43)(C). It follows that Kuhali is removable as an alien convicted of an "aggravated felony" under INA § 237(a)(2)(A)(iii).

## V Retroactivity

Kuhali presents two final challenges to his removal from the country. He maintains, as a matter of statutory construction, that the 1996 IIRIRA amendments to the INA's definition of "aggravated felony" should not be construed to apply retroactively to his 1980 conviction. He contends, further, as a matter of constitutional law, that such retroactive application violates the Constitution's guarantee of due process. We address both of these challenges.

### A. *Statutory Construction*

 Our construction of the INA's retroactive application is governed by the principles set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See also St. Cyr*, 121 S.Ct. at 2287–93 (following the *Landgraf* analysis). In *Landgraf*, the Supreme Court acknowledged that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." 511 U.S. at 265, 114 S.Ct. 1483. The Court held that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280, 114 S.Ct. 1483. If Congress has not done so, then the court must determine whether application of the statute to past conduct "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If application of the statute would produce a retroactive effect, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

In the present case, our task is made easier because Congress has explicitly defined the temporal reach of the new statute. The amended INA § 101(a)(43), which defines the term "aggravated felony," closes with the statement: "Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43) (as amended by IIRIRA § 321(b), 110 Stat. at 3009–628). The effective date provision for the new definition of "aggravated felony" similarly declares: "The amendments made by this section shall apply to actions taken

on or after the date of the enactment of this Act [Sept. 30, 1996], regardless of when the conviction occurred...." *Id.* § 1101 note, at 818 (Supp. V 1999) (Effective Date of 1996 Amendments) (alteration in original) (quoting IIRIRA § 321(c), 110 Stat. at 3009–628); *see St. Cyr,* 121 S.Ct. at 2289–90 & n. 43 (citing IIRIRA § 321(b) & (c) as examples of "Congress' willingness ... to indicate unambiguously its intention to apply specific provisions retroactively"); *United States v. Luna–Reynoso,* 258 F.3d 111, 115–16 (2d Cir.2001) (amended "aggravated felony" definition explicitly applies retroactively, for purposes of sentencing enhancements applicable to conviction under 8 U.S.C. § 1326); *Bell,* 218 F.3d at 89 ("The terms of the expanded definition [of 'aggravated felony'] apply retroactively."); *accord Park v. INS,* 252 F.3d 1018, 1025 (9th Cir.2001); *Aragon–Ayon v. INS,* 206 F.3d 847, 851–53 (9th Cir. 2000); *Choeum v. INS,* 129 F.3d 29, 36–37 (1st Cir.1997); *Mendez–Morales v. INS,* 119 F.3d 738, 739 (8th Cir.1997) (per curiam).

Because the INS initiated removal proceedings against Kuhali on January 13, 1999, well after IIRIRA's enactment on September 30, 1996, his 1980 conviction is clearly encompassed by the new provisions. Nonetheless, Kuhali insists that this result upsets his settled expectations because the immigration statute in place at the time of his conviction in 1980 would not have supported his removal from the country. But under *Landgraf,* we need not address this concern because Congress has made explicit that the new provisions of IIRIRA should apply retroactively. Consideration of earlier statutes is therefore irrelevant. *Sousa v. INS,* 226 F.3d 28, 33 (1st Cir.2000).

Moreover, we have already explained in considerable detail that the specific statute on which petitioner relies was rendered obsolete by other intervening congressional enactments, and we will not repeat that discussion here. *Bell,* 218 F.3d at 94–96 (discussing the Anti–Drug Abuse Act of 1988 and the Immigration Act of 1990); *accord St. Cyr,* 121 S.Ct. at 2276 ("In 1988, Congress further specified that an alien is deportable upon conviction for any 'aggravated felony,' ... which was defined to include numerous offenses without regard to how long ago they were committed."). That disposes of the statutory construction argument on retroactivity.

### B. *Due Process*

Finally, Kuhali warrants that this retroactive application of the IIRIRA amendments to his 1980 conviction violates constitutional due process. To the extent he contends that such retroactive application lacks any rational basis, the contention must fail. Congress has a legitimate interest in protecting society from the commission of aggravated felonies as well as the illegal trafficking, possession, and use of dangerous weapons, and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest. *Hamama v. INS,* 78 F.3d 233, 236 (6th Cir.1996) (analyzing predecessor statute to INA § 237(a)(2)(C)). Congress also has a narrower and equally legitimate interest in expeditiously removing dangerous aliens from the country, and uniform application of the new statute to remove *all* aliens convicted of certain offenses rationally furthers that purpose as well. *United States v. Yacoubian,* 24 F.3d 1, 7–8 (9th Cir.1994) (same).

To the extent petitioner relies on *ex post facto* concerns, that reliance is completely lacking in merit. A long and constant line of precedent establishes that statutes retroactively setting criteria for

**112**

deportation do not violate the *ex post facto* clause. *Domond v. U.S. INS*, 244 F.3d 81, 87 (2d Cir.2001); *e.g., Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) ("And whatever might have been said at an earlier date for applying the *ex post facto* Clause, it has been the unbroken rule of this Court that it has no application to deportation."); *United States v. Koziel*, 954 F.2d 831, 834–35 (2d Cir.1992) (collecting decisions). The *ex post facto* clause protects against the retroactive application of penal legislation. Deportation is a civil, not a criminal, proceeding. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952). As a result, retroactively applying the 1996 amendments to petitioner's 1980 conviction does not impair his due process rights.

## CONCLUSION

For the reasons set forth above, the judgment of the district court denying Kuhali's petition for a writ of habeas corpus is affirmed.